SALTER, J. (dissenting).
I respectfully dissent. In my view of the case, the successor probate judge had no jurisdiction to (1) address a future, as-yet-unfiled, petition to determine incapacity, or (2) enjoin a prospective petitioner and counsel from (a) using or referring to "Milton Wallace's confidential medical records or any expert reports relating to those medical records" in the as-yet-unfiled guardianship case, and (b) communicating, "directly or indirectly, or in any way with any member of an examining committee should one be appointed." The injunction prepared by counsel for Milton Wallace and signed by the successor probate judge goes far beyond the scope of the protective order entered in the trust proceeding.
*788 The underlying adversary proceeding involved a petition to enforce the terms of an irrevocable trust and marital agreement-issues primarily governed by the trust instrument and the Florida Trust Code[6] -and not the appointment of a guardian for an allegedly incapacitated person ("AIP") under the separate Florida Guardianship Law.[7] This is not a distinction without a difference.
Untangling the knots in this case is made more challenging by the fact that the petitioner in the trust action below, Comprehensive Personal Care Services, Inc. (CPCS), is a guardian for one of the beneficiaries of the trust in controversy, Hardy Wallace. Hardy Wallace is himself an incapacitated ward and is one of the sons of Milton Wallace and the late Patricia Wallace.
The Trust Issues
CPCS petitioned the circuit court to direct Milton Wallace to: fund the irrevocable trust as provided in the 2011 marital agreement; require Milton Wallace, as trustee, to identify and account for the assets required to be conveyed to the trust; allow CPCS to act to preserve the assets of the trust and marital agreement; and allow CPCS to rescind any transfers made in violation of the marital agreement and recover damages for any assets dissipated.[8] The answer, crossclaim, counterclaim, and third-party complaint filed by the other son, Mark Wallace, also asserted claims against Milton Wallace for breach of his duties as trustee and under the marital agreement obligating Milton Wallace to transfer jointly-owned assets to the trust after his wife's death. Mark Wallace's third-party complaint also sought to recover for the alleged conversion, fraud, breach of fiduciary duty, and fraudulent conveyance of putative trust assets to a transferee who was not a member of the Wallace family or beneficiary of the trust. Those claims remain pending.
Mark Wallace issued subpoenas for Milton Wallace's neurological and mental health records as part of his claims that the transferee was exerting undue influence over Milton Wallace, then 82 years old. CPCS (on behalf of Hardy Wallace) and Mark Wallace moved the court to remove Milton Wallace as trustee (sections 736.0706 and 736.1001 of the Florida Trust Code) based on claims of undue influence relating to trust administration; they did not petition (and to this point, have not petitioned) to have Milton Wallace determined to be incapacitated (under the Florida Guardianship Law).
As described in greater detail in a separate section of this opinion, Milton Wallace's primary treating neurologist for many years was Dr. Ranjan Duara. Mark Wallace spoke with Dr. Duara, with Milton Wallace's consent, regarding his father's degenerative brain disease. It was only after the adversary proceedings regarding the trust began that Milton Wallace's counsel instructed Dr. Duara not to communicate further with Mark Wallace.
Milton Wallace then objected to the subpoenas, production of his medical records, and deposition in the trust proceeding. The predecessor probate judge entered two protective orders relating to the records, limiting disclosure of such records to the clients, counsel, and medical experts "qualified in neurological disease" and retained for the purposes of evaluating the records. The confidential records were not to be produced or disseminated to others without *789 leave of the trial court.[9] These orders were entered in the adversary proceeding regarding the petitions by CPCS and Mark Wallace to require Milton Wallace to fund the irrevocable trust[10] and (thereafter) for the appointment of a special fiduciary to administer the trust.
Following an evidentiary hearing, the predecessor probate judge denied the joint motion to replace Milton Wallace as trustee of the irrevocable trust, concluding that a temporary injunction entered previously should be sufficient to protect the assets pending a trial on the merits.
Cross-Motions Regarding Use of the Medical Records in a Guardianship Case
In June 2018, Mark Wallace sought leave of court (in the adversary proceeding pertaining to the trusts-not in any existing guardianship case) to file the medical records produced by Dr. Duara and other expert medical reports as attachments to an as-yet-unfiled guardianship petition. In doing so, Mark Wallace sought to avoid a violation of the protective order entered by the predecessor probate judge[11] relating to Dr. Duara's records in the trust case. Milton Wallace opposed any such use of the records, and he also filed a cross-motion for an injunction to preclude Mark Wallace from attaching Dr. Duara's report to a future guardianship petition. Milton Wallace's cross-motion also asked the probate court "to enter an order preventing the parties and their respective counsel from directly or indirectly having any ex parte contacts with the examining committee, with the exception of Milton of course."
The resulting injunction is the only basis for our jurisdiction here. The earlier order denying the CPCS and Mark Wallace petitions (to remove Milton Wallace as trustee and to appoint a special fiduciary to administer the trust) was a non-final order. That order by the predecessor probate judge was not appealed; the order expressly left the door open for consideration of "other potential remedies under Section 736.1001, Florida Statutes, such as, for example, ordering a trustee to account, if such relief is developed by additional or other facts and circumstances in the future and if such relief is appropriate and supported by competent substantial evidence."
The Hearing on the Cross-Motions
The cross-motions regarding a prospective guardianship petition were heard by the successor probate judge on July 11, 2018. The transcript of the hearing discloses two matters of particular concern here. First, based on an objection by counsel for Milton Wallace, the successor probate judge refused to read or consider the contents of the very medical records in contention between the parties. The court relied on the representations of Milton Wallace's counsel that a "fair and orderly process" in the prospective guardianship case required an injunction instructing CPCS, Mark Wallace, and their counsel "not to file a petition that contains any of my client's medical information or discusses it in any way whatsoever, to prohibit them from in any way communicating with this panel, should one be appointed."
*790 Second, counsel for Milton Wallace cited to the successor judge, and argued the applicability of, this Court's guardianship opinion in Linde v. Linde, 199 So. 3d 1102 (Fla. 3d DCA 2016). Linde, however, involves an open guardianship case-not an as-yet-unfiled petition to determine incapacity-in which a ward sought to have his full capacity restored after an emergency petition was filed and a temporary guardian appointed.
In Linde, an initial petition to determine incapacity was filed under section 744.3201, Florida Statutes, and a three-person examining committee was appointed by the trial court. The trial court also appointed an emergency temporary guardian pursuant to section 744.3031, a procedure available when the court specifically finds that "there appears to be imminent danger that the physical or mental health or safety of the person will be seriously impaired or that the person's property is in danger of being wasted, misappropriated or lost unless immediate action is taken."
In that case, the ward and his wife "stipulated to the examining committee's finding of limited incapacity and to the admissibility of the examining committee's report in the guardianship proceedings." Linde, 199 So. 3d at 1103. The trial court removed the ward's rights to contract, manage property, sue, and marry. See id.
When the temporary guardian was appointed and the case was proceeding to a hearing for a permanent guardianship, the ward and his wife moved for disqualification of the assigned judge, and that motion was granted. See id. Thereafter, the ward and his wife filed a suggestion of capacity with the successor judge, seeking a restoration of the ward's rights. See id. Such a proceeding is governed by a separate section of the Florida Guardianship Law, section 744.464, within the "Termination" subpart of that law. Under that statute, entitled "Restoration to capacity," the court appoints one physician-not a three-professional examining committee-to examine the ward and report to the court.
The ward and his wife in Linde "filed an emergency petition for an injunction to prevent Temporary Guardian from communicating with the court-appointed physician," alleging that "ex parte communications between Temporary Guardian's attorneys and the examination committee had tainted the committee's report." Linde, 199 So. 3d at 1103. The court granted the injunction, but "also established a collaborative mechanism for all counsel to convene in response to any request for additional information by the independent physician." Id. The independent physician then found that the ward was capable of exercising the rights previously limited, and the court fully restored the ward's rights. See id. In the subsequent appeal, this Court affirmed the injunction based, as it was, on evidentiary issues. See id. at 1104.
Importantly, our opinion in Linde distinguishes the procedure for an initial petition for a determination of incapacity (as in the present case) from the procedure governing a suggestion of capacity (as involved in Linde ):
As the statute governing initial incapacity makes clear, each member of the examination committee must have access to prior examination reports of the incapacitated person. No such requirement is contained in the statute governing examinations of a ward conducted upon the filing of a suggestion of capacity. In fact, section 744.464(2) neither incorporates section 744.341's examination requirements, nor contains any other *791 specific requirements for the independent physician's examination.
Id. at 1105 (original emphasis).
This Court's decision in Linde emphasized that an initial examination committee "must have access" to prior examination reports of an AIP, and not that the committee should be prohibited from reviewing such reports. Counsel for Milton Wallace relied upon an inapposite holding, regarding a different statute, and thereby led the successor probate judge into error.
Scope of the Injunction Prepared by Counsel
At the conclusion of the hearing that culminated in the written injunction order under review here, the successor probate judge still had not reviewed the medical records which Mark Wallace sought leave to attach to a future petition for a determination of incapacity. The judge's oral pronouncement granted "injunction relief to prevent the ex parte communications with the examining committee," (a committee which had not yet been appointed), but also stated that once a guardianship petition was filed, "the Court can readdress any motions you may have, but right now I believe your request for his records as well is premature, as well as a violation of the prior court order."
The written order submitted by counsel for Milton Wallace and signed by the probate judge three weeks after the hearing, however, included much more sweeping injunctive provisions and did not include the judge's suggestion that the probate court could "readdress" these matters after a petition was actually filed. The order prohibited Mark Wallace-the AIP's son with years of knowledge regarding his father's medical issues and consultations with Dr. Duara-from any ex parte communication with the members of the examining committee, and prohibited him and his counsel from "using, attaching, publishing or in any way disseminating Milton Wallace's confidential medical records except as set forth in the [protective order in the trust case]." The final paragraph of the injunction commands, "With the exception of Milton Wallace, all parties and their respective counsel and/or representatives shall not communicate, either directly or indirectly, or in any way with any member of an examining committee should one be appointed." Counsel for Milton Wallace prepared and obtained, in short, an order inimical to the text of the guardianship statute itself and our holding in Linde that the examining committee "must have access to prior examination reports of the alleged incapacitated person." 199 So. 3d at 1105 (original emphasis).
Guardianship: Medical Assessment, Not Trust Administration
The injunction under review here is, in my view, a prior restraint and "medical gag order" that is: (1) premature, given the confidentiality and protection afforded a petition for incapacity and its attachments when filed in the separate mental health/guardianship unit of the circuit court, (2) an unwarranted usurpation of the guardianship judge's[12] discretion and authority following the actual filing of a petition for incapacity and attachments (if any), and the guardianship judge's consideration of the specific details of those *792 pleadings and papers; and (3) a detour from a trust case into a separate body of law, the Florida Guardianship Law, before an actual petition for a determination of incapacity has been filed.
As discussed further below, the premature injunction also curtails the collaborative process by which a three-member independent examining committee-experts in neurology, psychology, psychiatry, gerontology, nursing, or social work appointed pursuant to section 744.331(3) of the Guardianship Law-assesses the capacity or incapacity of an AIP after the petition has been filed. The separate Florida Guardianship Law itself confirms that the "independence" of the examining committee refers to the fact that the members have no personal financial or previous medical relationship with an AIP-not to some type of quarantine whereby the members are isolated from prior medical records, diagnoses, and consultation with other professionals who previously have treated the AIP for pertinent conditions.
• The verified petition to determine incapacity must "specify the factual information on which such belief is based and the names and addresses of all persons known to the petitioner who have knowledge of such facts through personal observations." § 744.3201(2)(d). Mark Wallace has identified himself as the prospective petitioner, so he would be required to disclose those specific facts he already knows, including Dr. Duara's identity, location, and those findings known to Mark Wallace.
• The petition must also state "the name and address of the alleged incapacitated person's attending or family physician, if known." § 744.3201(2)(e). This requirement by the Legislature confirms that the examining committee must be provided contact information to facilitate communication with those physicians who have an existing knowledge base regarding the AIP's condition.[13] Such communication would, as a matter of traditional collaboration among medical professionals addressing an individual's symptoms or condition, include records of relevant prior and current treatment, diagnostic tests, lab results, radiology reports, notes of consultations with other professionals, and other relevant information.
• The duties of the examining committee appointed to evaluate the AIP include the obligation to consult with an attending or family physician identified in the petition, if "available for consultation." § 744.331(3)(a). This requires, not prohibits, constructive communication among the medical/psychological professionals appointed to the committee.
• Testimony and records that are not subject to the trust proceeding protective orders are abundant regarding Dr. Duara's diagnoses of Milton Wallace going back to at least 2010, *793 including Mark Wallace's personal knowledge of Milton Wallace's diagnosis with a degenerative brain disease. Mark Wallace testified that he spoke with Dr. Duara personally to discuss the medical diagnosis and prognosis regarding his father's condition after his mother passed away in 2016. Dr. Duara testified that these communications were with Milton Wallace's consent. The estate planner who drafted Patricia and Milton Wallace's estate plan documents, including the irrevocable trust agreement, marital agreement, and wills for Milton and Patricia Wallace, was also aware that they had serious concerns about Milton Wallace's diagnosis and prospective incapacity.
• Attaching a copy of a recent psychological and cognitive assessment of an AIP to the initial petition for appointment of a guardian is calculated to assist an examining committee. It is not prohibited by section 744.3201 or Florida Probate Rule 5.550 regarding the petition, nor by section 744.331 specifying the procedures for determining incapacity. See Sarfaty v. M.S., 232 So. 3d 1074, 1082 (Fla. 3d DCA 2017) (petition and attached psychological assessment based on personal clinical interviews, cognitive evaluation tests, and prior diagnostic history, held facially sufficient to survive a motion for dismissal of the petition with prejudice). Contrary to the injunction under review, an examining committee must remain free, in the exercise of the professional judgment of each member, to reach its own assessment of the AIP's capacity or incapacity, and to accept or reject any prior tests, diagnoses, or records provided by an attending physician of the AIP. The members must also be free to accept or reject input from family members and others with personal knowledge as identified in the petition. No Florida statute or reported case, in contrast, precludes the petitioner from providing allegedly-pertinent medical history and related records to the examining committee members (by attaching such records to the petition or by meeting with the committee members).
Milton Wallace's Privacy
The guardianship and related procedures are respectful of the appellee's, or any actual AIP's, right to medical privacy. A separate mental health unit (with case numbers designated "MH" in the Miami-Dade circuit) receives a guardianship petition. The filings and reports in the case, pending the adjudicatory hearing and a written order determining incapacity, are not public. The AIP is permitted to have the adjudicatory hearing (and any other hearing) closed. See Fla. Prob. R. 5.540(a).
If an order of incapacity is entered and a guardian is appointed, a separate case in the guardianship is commenced with "GD" in the caption. Reports filed in that case are "subject to inspection only by the court, the clerk or the clerk's representative, the guardian and the guardian's attorney,"[14] unless the court is shown good cause to authorize inspection by others.
But the confidentiality of the AIP's medical records must be balanced against the right of a petitioner, particularly a close family member, to seek the appointment of *794 a guardian (or other relief under the Florida Guardianship Law) for the AIP's protection and welfare.[15] That confidentiality is also subject to the professional obligation of an examining committee member to render a fully-informed assessment of the AIP for the committee's report to the probate court.
Conclusion
The successor probate judge in the trust case erred by entering the injunction without having reviewed the medical records in controversy. More significantly, the court lacked jurisdiction in the trust case to enter an injunction applicable to an as-yet-unfiled guardianship case, thereby prohibiting communications that are not only permissible, but required under the separate text of the Florida Guardianship Law and this Court's precedent. We should reverse the non-final injunction order and remand the case to the probate court with instructions to vacate it.
In the event CPCS or Mark Wallace subsequently elects to file a petition to determine incapacity, the petition should comply with the applicable statutes, rules, and precedent. The AIP could then file such motions to strike attachments or limit communications with the examining committee as the AIP or his counsel deem appropriate.
For all these reasons, I respectfully dissent.

Chapter 736, Fla. Stat. (2018).

Chapter 744, Fla. Stat. (2018).

The petition also sought attorney's fees, costs, and "such other relief as the Court deems just and proper."

Consistent with the protective orders and additional motions filed by the parties in this Court, the briefs and record pertaining to these documents have been filed here under seal.

CPCS and Mark Wallace were ultimately granted a partial summary judgment ordering Milton Wallace to transfer all joint marital assets into the irrevocable trust.

The predecessor judge retired before a successor probate judge heard and ruled on the as-yet-unfiled guardianship issues.

It may eventuate that the successor probate judge who entered the premature injunction is the judge ultimately assigned to the guardianship petition if and when filed. Nonetheless, that judge when assigned is bound to apply a different body of law (the Florida Guardianship Law, Chapter 744) and a different set of rules (Part III of the Florida Probate Rules, 5.540 through 5.800 ). A protective order well suited to a trust-related issue may frustrate the efforts of medical and mental health professionals in their subsequent assessment of an AIP's capacity or incapacity.

Mark Wallace's motion for relief from the earlier protective orders also asked the probate court (in the trust case) to permit him to attach three opinions of experts who evaluated the medical records obtained from Dr. Duara and other information. These three opinions, however, were not based on personal consultations with Milton Wallace. Because the verified allegations in a guardianship petition are to be based on "personal observations" and consultations with "attending" physicians, section 744.3201(2), those opinions would not seem to be subject to our holding in Linde regarding reports for which an examining committee "must have access." The relevance and admissibility of such expert reports ordinarily would be determined in preparation for, or at, the adjudicatory hearing.

§ 744.3701, Fla. Stat. (2018), "Confidentiality." Although not pertinent here, a guardian ad litem appointed in connection with separate provisions pertaining to the settlement of a minor's claim may also review such reports.

In the present case, there is additional concern for the incapacitated son of Milton Wallace, Hardy Wallace, for whom CPCS has served as guardian since 2015.